**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**PAUL ANDRUSYSHYN,**

**Plaintiff,**

**Case No. 6:26-cv-1962**

**v.**

**KORE.AI, INC., KAPIL VENKATACHALAM, an individual, MUKESH AGHI, an individual, and RANDY GARG, an individual,**

**Defendants.**
________________________________/

**COMPLAINT, DEMAND FOR JURY TRIAL,**
**AND PETITION TO VACATE ARBITRATION AWARD**

Plaintiff Paul Andrusyshyn ("Andrusyshyn" or "Plaintiff"), by and through undersigned counsel, brings this Complaint, Demand for Jury Trial, and Petition to Vacate Arbitration Award against Defendants Kore.ai, Inc. ("Kore"), Kapil Venkatachalam ("Venkatachalam"), Mukesh Aghi ("Aghi"), and Randy Garg ("Garg")(collectively, "Defendants"), and alleges as follows:

**PARTIES**

1. Plaintiff Paul Andrusyshyn is an individual who resides in Ontario, Canada and is a citizen of Canada.

2. Plaintiff is a natural person who is at least 18 years of age and is *sui juris*.

3. Upon information and belief, Defendant Kore.ai, Inc. is a corporation that is incorporated in the State of Delaware and has its principal place of business in the State of Florida.

4. Upon information and belief, Defendant Kapil Venkatachalam is a natural person who is at least 18 years of age, is *sui juris*, and is a citizen of the state of New Jersey.

5. Upon information and belief, Defendant Mukesh Aghi is a natural person who is at least 18 years of age, is *sui juris*, and is a citizen of the District of Columbia.

6. Upon information and belief, Defendant Randy Garg is a natural person who is at least 18 years of age, is *sui juris*, and is a citizen of Canada.

## <u>JURISDICTION AND VENUE</u>

7. This Court has federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under the laws of the United States, including but not limited to 15 U.S.C. § 78j(b), 15 U.S.C. § 77q(a), 18 U.S.C. § 1964(c), 9 U.S.C. § 10(a), and 29 U.S.C. § 1109(a).

8. This Court has supplemental jurisdiction over this action pursuant to 28 U.S.C. § 1367 as non-federal claims arise out of the same facts and circumstances which form the case or controversy over which this Court has federal question jurisdiction.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in this

district, including the negotiation, execution, and alleged breach of the agreements at issue, as well as the arbitration proceedings, which took place in Orlando, Orange County, Florida.

10. The Orlando Division is the proper division pursuant to Middle District of Florida Local Rule 1.04(a)

**GENERAL ALLEGATIONS**

11. On or about February 19, 2020, Defendant issued an offer letter to Plaintiff proposing employment and including an award of 50,000 option shares. (Exh. 2.)

12. Plaintiff began performing work for Defendant on or before March 1, 2020.

13. Shortly after Plaintiff began work, the Parties determined that, because Plaintiff is Canadian, it would be preferable to convert Plaintiff from an employee to an independent contractor, with Plaintiff's business "Bear Digital Consulting" issuing invoices for services rendered.

14. On or about March 16, 2020, the Parties executed an Independent Contractor Agreement with an effective date of April 1, 2020 (the "2020 ICA"). (Exh. 3.)

15. Pursuant to Exhibit A of the Initial ICA, Defendant was to pay Plaintiff $20,000 per month.

16. On or around April 1, 2020, Defendant provided Plaintiff with a Notice of Stock Option Grant ES-70 (Exh. 4), a Stock Option Agreement (Exh. 5), a form of

Stock Option Exercise Notice and Agreement (Exh. 6), and the 2015 Equity Incentive Plan (Exh. 7) (collectively the "Grant").

17. The Grant was subject to the terms and conditions of the 2015 Equity Incentive Plan and the Stock Option Agreement, including its annexes.

18. Section 17.2 of the Stock Option Agreement incorporated by reference the Plan, the Stock Option Grant, and the Exercise Notice.

19. A major factor in Plaintiff's decision to work for Defendant was the issuance of stock options, and the offer letter included an award of 50,000 shares of common stock.

20. The Parties reaffirmed the terms of the offer letter, including its compensation package, by continuing to pay Plaintiff commission, which was not included in the 2020 ICA.

21. On or about May 7, 2021, Defendant initiated the Stock Option Grant ES-70 for Plaintiff, which Plaintiff executed on or about June 8, 2021.

22. By virtue of the Grant, Plaintiff was awarded the right to purchase up to 50,000 shares of Defendant's stock at a strike price of $0.64 per share.

23. The Grant's vesting schedule represented the beginning date of Plaintiff's vesting period as April 1, 2020, which coincided with the start date of the 2020 ICA.

24. The Stock Option Agreement provided that Plaintiff could exercise vested shares within three months after the "termination date," but in no event after the expiration date.

25. The Equity Plan similarly required exercise of vested options within three months after termination unless otherwise determined by the committee.

26. On September 28, 2021, the Parties executed a document entitled "Independent Contractor Agreement – Amended" (the "2021 ICA") with an effective date of October 4, 2021. (Exh. 8.)

27. Pursuant to Exhibit A of the 2021 ICA, Defendant paid Plaintiff at the rate of $125 per hour.

28. The scope of work and compensation under the ICA Amended differed from those under the Initial ICA.

29. Neither the 2020 ICA nor the 2021 ICA had a fixed end date.

30. Instead, the 2020 ICA and 2021 ICA provide:

> This Agreement may be terminated by either the Company or the Contractor at any time by giving seven (7) days' written notice of termination. Such notice may be given at any time for any reason, with or without cause.

(Exh. 1 ¶ 7.)

31. The Agreement also states:

> All notices required or given herewith shall be addressed to the Company or Contractor at the designated addresses shown below by registered mail, special delivery, or by certified courier service [addresses provided].

(*Id.* ¶ 13.)

32. On April 1, 2024, Plaintiff's 50,000 shares became fully vested, four years after the grant date.

33. On or about April 16, 2024, Plaintiff, through counsel, sent Defendant written notice of termination of the 2021 ICA and stated that he would like to purchase vested stock options at the exercise price. (Exh. 9.)

34. Plaintiff had not given or received such notice for the 2021 ICA before April 16, 2024.

35. On May 3, 2024, Defendant, through counsel, rejected the April 16, 2024 notice and stated that Plaintiff had not performed work since November 9, 2021, and denied Plaintiff's right to purchase the stock options.

36. In sum, the Parties disputed the date Andrusyshyn ceased providing services under the 2021 ICA.

37. Accordingly, on or about July 1, 2024, Andrusyshyn initiated proceedings with the American Arbitration Association ("AAA"), alleging that Kore's indication that it would not permit Andrusyshyn to exercise the purchase rights under the Grant within three (3) months of the termination date of April 23, 2024 was a breach of contract. (Exh. 10.)

38. The arbitration process via AAA proceeded, and on or about February 12, 2025, the arbitrator held a hearing on Kore's early dispositive motion.

39. In the course of the hearing, Andruyshyn, via counsel, advised that as of the date of that hearing, despite knowing that the Parties disagreed on the date of Andrusyshyn's "termination", Kore had not convened a committed and/or the Board to designate a termination date.

40. Kore's motion was denied.

41. On or about August 5, 2025, Plaintiff, through counsel, sent Defendant written notice of termination of the 2020 ICA in the manner set forth in that agreement, and stated that he would like to purchase vested stock options at the exercise price. (Exh. 11.)

42. Plaintiff had not given or received such notice for the 2020 ICA before August 5, 2025.

43. On September 22, 2025, Plaintiff sent Defendant, through counsel, an email with completed documents to purchase 50,000 stock options and inquired on how to remit the payment for the same. (Exh. 12.)

44. Plaintiff was prepared to make the required payment for the shares at the time he sent the September 22, 2025 email. (*See id.*)

45. Kore did not provide Andrusyshyn with payment instructions.

46. Rather, on or about October 11, 2025, the "Compensation Committee of the Board of Directors of the Company" adopted a resolution deeming Andrusyshyn's termination date April 22, 2022; thus, the final date Andrusyshyn could have exercised his stock purchase rights under the Grant became July 22, 2022 (per the resolution). (Exh. 13.)

47. The final arbitration hearing was held in Orange County, Florida, on March 12 and 13, 2026.

48. On June 3, 2026, following the final hearing, the Arbitrator issued the Award on Amended Complaint ("Award"). (Exh. 14.)

49. In the Award, the Arbitrator noted that he lacked the jurisdiction to address the issues in this case because he determined that the ICAs did not govern the stock purchase, stating, in relevant part:

> The Stock Option Agreement does not have an arbitration provision.
> …
>
> **For the foregoing reasons, the Arbitrator finds that the Stock Option Agreement in the instant case is not subject to arbitration.** In addition, the Arbitrator also finds that the Claimant's breach of the Stock Option Agreement claims that the Claimant tries to bring forth under the parties' Contracts do not arise out of those Contracts which the Arbitration provision in the Contracts only permits shall be resolved in final and binding arbitration.

(Exh. 14 at 33.)(emphasis supplied).

50. On August 10, 2026, Plaintiff filed a motion to stay payment of arbitration costs and arbitrator fees pending a motion to vacate the award.

## COUNT I—BREACH OF CONTRACT
## (as to Defendant Kore)

51. Plaintiff realleges and reincorporates paragraphs 1 through 50, as if fully set forth herein.

52. Pursuant to the terms of the Stock Option Agreement, California law applies to this claim. (Exh. 5 at 11, ¶ 20.)

53. The Parties entered into valid and enforceable contracts, including the 2020 ICA, 2021 ICA, and the Grant.

54. The Grant provides Andrusyshyn the opportunity to purchase up to 50,000 shares of Common Stock at the strike price of $0.64 per share. (Exh. 4.)

55. Andrusyshyn transmitted his 7-day written notice of termination of the 2021 ICA on April 16, 2024, consistent with the plain language of the 2021 ICA.

56. Neither of the Parties terminated the 2020 ICA and/or 2021 ICA pursuant to the terms of each of those agreements prior to Andrusyshyn's April 16, 2024 letter.

57. Thus, on April 1, 2024, Andrusyshyn became fully-vested in all 50,000 shares of common stock.

58. The last of the two agreements for work Andrusyshyn was to perform for Kore was terminated by Andrusyshyn via a 7-day written notice of termination letter transmitted on August 5, 2025.

59. As a result of that letter, the 2020 ICA was terminated effective August 12, 2025. (*See* Exh. 11.)

60. Pursuant to the Grant, Andrusyshyn would have had three months from August 12, 2025 to purchase 50,000 shares of common stock at $0.64 per share. (Exh 5 at 1, ¶ 3.1.)

61. Indeed, on September 22, 2025, Andrusyshyn transmitted executed forms for the purchase of the 50,000 shares to Kore (via its counsel).

62. As reflected in the Amended Complaint, Andrusyshyn inquired how to transmit the payment to Kore and, as of the October 3, 2025 filing of the Amended Complaint, Kore refused to provide payment instructions. (Exh. 15 at 5, ¶¶ 26-30.)

63. Kore breached the Grant by refusing to allow Andrusyshyn to purchase the 50,000 shares provided and/or honoring his execution of his right to purchase the shares as represented in the September 22, 2025 email.

64. Moreover, Kore acted with unclean hands by refusing to provide Andrusyshyn with the information necessary for him to transmit payment for the shares.

65. As a direct and proximate result of Kore's breach of the Grant, Andrusyshyn has suffered damages; to wit: the ownership of the 50,000 shares to which he was entitled and/or the monetary value of the differential between the strike price and the reasonable projected market value of the shares.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter judgment against Kore for the following:

A. Declare that Kore breached its contractual and statutory obligations to Plaintiff, including but not limited to the Independent Contractor Agreements dated April 1, 2020 and October 4, 2021, the Stock Option Agreement, and the 2015 Equity Incentive Plan, and that Plaintiff is entitled to exercise his vested stock options as set forth therein;

B. Direct Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore.ai, Inc. stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price.

C. Award Plaintiff Paul Andrusyshyn compensatory damages against Kore in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore.ai, Inc. stock less the exercise price, or such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Kore's conduct.

D. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

E. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

F. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract; and

G. Grant Plaintiff such other and further relief as the Court deems just and proper.

**COUNT II—CONVERSION**
**(Against all Defendants)**

66. Plaintiff realleges and reincorporates paragraphs 1 through 50, as if fully set forth herein.

67. Andrusyshyn had a property right in the 50,000 vested shares of stock in Kore that he indicated to Kore that he wished to exercise his rights to on or about September 22, 2025.

68. Kore declined to provide Andrusyshyn with the information to remit payment for the shares and, thereafter, wrongfully declared his termination date to April 22, 2022 for the purpose of depriving Andrusyshyn of his right to exercise his stock purchase options.

69. Indeed, Venkatachalam, Aghi, and Garg, acting as members of the *ad hoc* committee for Kore, approved of a resolution on behalf of Kore for the express purpose of depriving Andrusyshyn of his right to purchase his shares.

70. Accordingly, Kore, Venkatachalam, Aghi, and Garg, in concert, acted with intent to convert Andrusyshyn's 50,000 shares, despite knowing of his exercising that right to the shares, for the purpose of depriving him of those shares and returning them to Kore for Kore's benefit.

71. The 50,000 shares that Andrusyshyn was entitled to purchase at the strike prices would be worth substantially more than their strike price.

72. Therefore, by unlawfully converting Andrusyshyn's property, Kore, Venkatachalam, Aghi, and Garg, obtained monetary benefits to which they were not entitled.

73. The Defendants converted Andrusyshyn's property rights in the stock options with full knowledge of his rights thereto and with the malicious intent to deprive him of the same.

74. Andrusyshyn suffered damages as a result of the Defendant's conduct.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter joint and several judgment against each and every Defendant for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

**COUNT III—FRAUDULENT TRANSACTIONS (FLA. STAT. § 517.301) (Against Defendant Kore)**

75. Plaintiff realleges and reincorporates paragraphs 1 through 50, as if fully set forth herein.

76. As against Kore, Plaintiff asserts a claim under section 517.301, *Florida Statutes*, for manipulative and deceptive devices.

77. Kore, in connection with the purchase or sale of the 50,000 stock options, employed devices, schemes, or artifices to defraud, made untrue statements of material fact or omitted to state material facts necessary to make the statements made not misleading, and engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Plaintiff in connection with his stock options.

78. Andrusyshyn relied on Kore's representations and omissions, as set forth in the 2020 ICA and 2021 ICA as to his termination date, to his detriment, and suffered damages as a result.

79. In particular, because Kore did not terminate the 2020 and/or 2021 ICAs as set forth therein, and Andrusyshyn remained willing and able to perform work for

Kore, Andrusyshyn reasonably believed he maintained the right to exercise his stock options as set forth in the Grant and affiliated documents.

80. Nevertheless, and with full knowledge of Andrusyshyn's intent to purchase his shares, Kore retroactively defined Andrusyshyn's termination date in an attempt to deprive him of his right to exercise his stock options.

81. Andrusyshyn suffered damages as a result of Kore's conduct.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter judgment against Defendant Kore for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or such other amount as proven at trial, together with all other actual,

consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

**COUNT IV—MANIPULATIVE AND DECEPTIVE DEVICES**
**(Against Defendant Kore)**

82. Plaintiff realleges and reincorporates paragraphs 1 through 50, as if fully set forth herein.

83. As against Kore, Plaintiff asserts a claim under Section 78j(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), for manipulative and deceptive devices.

84. Kore, in connection with the purchase or sale of the 50,000 stock options, employed devices, schemes, or artifices to defraud, made untrue statements of material fact or omitted to state material facts necessary to make the statements made not

misleading, and engaged in acts, practices, or courses of business which operated as a fraud or deceit upon Plaintiff in connection with his stock options.

85. Andrusyshyn relied on Kore's representations and omissions, as set forth in the 2020 ICA and 2021 ICA as to his termination date, to his detriment, and suffered damages as a result.

86. In particular, because Kore did not terminate the 2020 and/or 2021 ICAs as set forth therein, and Andrusyshyn remained willing and able to perform work for Kore, Andrusyshyn reasonably believed he maintained the right to exercise his stock options as set forth in the Grant and affiliated documents.

87. Nevertheless, and with full knowledge of Andrusyshyn's intent to purchase his shares, Kore retroactively defined Andrusyshyn's termination date in an attempt to deprive him of his right to exercise his stock options.

88. Andrusyshyn suffered damages as a result of Kore's conduct.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter judgment against Defendant Kore for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the

contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

## COUNT V—FRAUDULENT INTERSTATE TRANSACTIONS (Against Defendant Kore)

89. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

90. As against Defendant Kore, Plaintiff asserts a claim under Section 77q(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), for fraudulent interstate transactions.

91. Kore, in the offer or sale of securities, employed devices, schemes, or artifices to defraud, obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary to make the statements made not misleading, and engaged in transactions, practices, or courses of business which operated as a fraud or deceit upon Plaintiff.

92. Andrusyshyn relied on Kore's representations and omissions, as set forth in the 2020 ICA and 2021 ICA as to his termination date, to his detriment, and suffered damages as a result.

93. In particular, because Kore did not terminate the 2020 and/or 2021 ICAs as set forth therein, and Andrusyshyn remained willing and able to perform work for Kore, Andrusyshyn reasonably believed he maintained the right to exercise his stock options as set forth in the Grant and affiliated documents.

94. Nevertheless, and with full knowledge of Andrusyshyn's intent to purchase his shares, Kore retroactively defined Andrusyshyn's termination date in an attempt to deprive him of his right to exercise his stock options.

95. Andrusyshyn suffered damages as a result of Kore's conduct.

96. In engaging in the conduct alleged in paragraphs 89-95, Kore used tools of interstate commerce, via electronic mail and other interstate methods of communication, to further its unlawful actions.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter judgment against Defendant Kore for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

**<u>COUNT VI— CIVIL RICO</u>**
**<u>(Against all Defendants)</u>**

97. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

98. As against all Defendants, Plaintiff asserts a claim under 18 U.S.C. § 1964(c) for civil remedies under the Racketeer Influenced and Corrupt Organizations Act ("RICO").

99. The Defendants, through a pattern of racketeering activity involving fraud and conversion related to Plaintiff's stock options, conducted or participated in the conduct of an enterprise's affairs through such pattern, causing injury to Plaintiff's business or property.

100. In particular, the four Defendants acted in concert and with intent to deprive Andrusyshyn of his rights and privileges to exercise his stock options.

101. The Defendants breached its contractual obligations to Andrusyshyn, defrauded him by denying his rights under the contracts, and by converting his

property to Kore via its retroactive determination of his termination date for the purpose of obtaining his property (and the value thereof).

102. In so doing, the Defendants deployed instruments of interstate commerce, such as electronic mail and mail transmitted through postal service.

103. Andrusyshyn is entitled to recover treble damages, costs, and attorneys' fees.

104. Andrusyshyn suffered damages as a result of Kore's conduct.

105. In engaging in the conduct alleged in paragraphs 89-95, Kore used tools of interstate commerce, via electronic mail and other interstate methods of communication, to further its unlawful actions.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter joint and several judgment against each and every Defendant for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

**COUNT VII— BREACH OF FIDUCIARY DUTY**
**(Against all Defendants)**

106. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

107. Andrusyshyn asserts a claim under 29 U.S.C. § 1109(a) for liability for breach of fiduciary duty.

108. The Defendants, as fiduciaries with respect to the administration of the stock option plan and/or officers of Kore, breached their duties by failing to act solely in the interest of Plaintiff as a plan participant, failing to provide accurate information, and failing to permit Plaintiff to exercise his vested options.

109. Plaintiff suffered losses as a result of Defendant's breach.

110. Defendant is liable for all losses resulting from such breach, and for such other equitable or remedial relief as the Court may deem appropriate.

WHEREFORE, Plaintiff Paul Andrusyshyn respectfully demands that the Court enter joint and several judgment against each and every Defendant for the following:

A. Deem the Defendants' resolution of Andrusyshyn's termination date as April 22, 2022 as invalid;

B. Recognize that Andrusyshyn timely exercised his contractual right to exercise his stock options via his September 22, 2025 correspondence;

C. Require Kore to specifically perform its obligations under the Stock Option Agreement and related plan documents by permitting Plaintiff to exercise his right to purchase 50,000 shares of Kore stock at the contractually agreed strike price of $0.64 per share, upon Plaintiff's tender of the exercise price;

D. Award Plaintiff Paul Andrusyshyn compensatory damages against the Defendants in an amount to be determined at trial, but not less than the fair market value of 50,000 shares of Kore stock less the exercise price, or

such other amount as proven at trial, together with all other actual, consequential, and special damages suffered as a result of Defendant's conduct;

E. Award Plaintiff all losses and such other equitable or remedial relief as the Court may deem appropriate;

F. Award Plaintiff prejudgment and post-judgment interest as permitted by law;

G. Award Plaintiff the costs of this action, including reasonable attorneys' fees and expert witness fees as authorized by statute or contract;

H. Award Plaintiff punitive damages for the Defendants' intentional misconduct; and

I. Grant Plaintiff such other and further relief as the Court deems just and proper.

## PETITION TO VACATE ARBITRATION AWARD

111. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 50 above as if fully set forth herein.

112. As against Kore.ai, Andrusyshyn asserts a claim under 9 U.S.C. § 10(a) for vacatur of the arbitration award. (Exh. 14.)

113. The arbitration award should be vacated on the grounds that the arbitrator exceeded his powers.

114. In particular, the arbitrator held that the Grant governed Andrusyshyn's purchase of the stock options, and that the Grant did not have an arbitration provision. (*See id.* at 33.)

115. Accordingly, the Award is due to be overturned, because the arbitrator lacked the authority to render a decision as to Andrusyshyn's right to exercise his stock options.

116. Plaintiff lacks an adequate remedy at law.

WHEREFORE, Andrusyshyn seeks an order vacating the arbitration award and such other equitable relief as the Court deems just and proper.

**JURY TRIAL DEMAND**

The Plaintiff demands a jury trial on all issues so triable.

Respectfully submitted this 2nd day of September, 2026.

*/s/ Shaina Thorpe*
**SHAINA THORPE**
Florida Bar No. 0055464
Primary: shaina@thorpelaw.net
Secondary: admin@thorpelaw.net

**THORPELAW, P.A.**
100 S. Ashley Drive, Ste. 600
Tampa, Florida 33602
Telephone: (813) 400-0229
Fax: (813) 944-5223

*Lead Counsel for Plaintiff Paul Andrusyshyn*